Edward S. Dreyer v. Helen L. Kadish et al., Adm'x, etc.

1. GUARANTY—*Consideration for, Must be Shown.*—In a suit against a guarantor of a promissory note where it appears that at the time the plaintiff acquired the note the guarantor was in no manner liable upon it, the burden is upon the plaintiff to show a consideration for a subsequent guaranty.

2. VERDICTS—*Contrary to the Evidence.*—The court reviews the evidence in this case and holds that there is no evidence to show a consideration for the guaranty sued on, and that the verdict and judgment are manifestly contrary to the evidence.

Assumpsit, on a guaranty of a promissory note. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the March term, 1897. Reversed and remanded. Opinion filed March 29, 1897.

LACKNER & BUTZ, attorneys for appellant.

GEORGE B. MERRICK, attorney for appellees.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Judgment for $14,255.53 was recovered by the defendants in error against the plaintiff in error, in a suit brought by the former against the latter upon his alleged guaranty of a promissory note for $10,000, made by the Chicago Garbage Reduction Company, dated April 1, 1890, payable in one year to the order of Albert D. Langworthy.

The note was one of a series of like instruments, except in amounts, aggregating $16,000, by the same maker to the same payee, all secured by a chattel mortgage upon the plant of the maker, and seem to have been made by the corporation maker for the purpose of raising money from its stockholders to enable it to continue in business, and to pay its debts for about the same amount then held against it by the firm of E. S. Dreyer & Company, of which plaintiff in error was a member. Leopold Kadish, the intestate of defendants in error, and the plaintiff in error were among

its stockholders, and the note in question represented the relative share of the notes that Kadish had said he would take.

The payee of the notes was not personally interested in any of the transactions, but was a clerk for E. S. Dreyer & Company, and was a mere instrument to hold and distribute the notes among the stockholders who were to pay for them, and the notes were indorsed by him without recourse. Above his indorsement on the back of the note in suit, was indorsed the name of the plaintiff in error, but when it was put there and for what purpose, and if not put there until after Kadish had received and become the ower of it, whether for a consideration or not, are the questions in the case.

The declaration alleged the making of the note in the lifetime of Kadish, and "that Langworthy, the payee, afterward, and before the payment of any part of the note, and before it became due, indorsed the said note without recourse to Leopold P. Kadish or order, and delivered the same to him; that before the delivery of the note to Kadish, in consideration that he would accept and receive the same of the Chicago Garbage Reduction Company, and for a valuable consideration to him paid by Kadish, the defendant, by his indorsement in writing upon the said note, guaranteed the payment thereof according to the tenor and effect of the note, if the Chicago Garbage Reduction Company should not pay the same; that Kadish, relying upon the indorsement, accepted the note, and although the note has long since been due, the said company has not paid same or any part thereof; by means whereof the defendant became liable to pay to the plaintiff the sum of money in the note specified."

The only plea was the general issue.

It was clearly proved, that Kadish paid for the note, and that it was delivered to him, indorsed by the payee, before it was indorsed by the plaintiff in error, and the declaration, as quoted, probably admits a part of such facts.

There was no attempt to contradict the testimony of Mr.

Berger, a member of the firm of E. S. Dreyer & Company, that at the time, April 4, 1893, when he delivered the note, already indorsed by the payee, to Kadish, the latter paid $10,000 for the note, and that Mr. Dreyer's name was not then indorsed on the note. A week or two afterward he again saw the note in Kadish's hands, and Mr. Dreyer's name was not then upon it. Langworthy, the payee, testified that Dreyer's name was not on the note when he indorsed it.

Prussing, the president of the corporation, whose note it was, testified that on April 4, the day on which Mr. Berger delivered the note to Kadish, he saw the note in Kadish's hands and that Dreyer's name was not on it, although Langworthy's was. And to such testimony there was no contradiction.

It being thus clearly proved that at the time Kadish acquired the note Dreyer was in no manner liable upon it, it devolved upon defendants in error to show that for his subsequent guaranty a consideration was paid. This was not done. We have examined the record with the greatest care to discover, if we might, some evidence of such a consideration, but without success.

Although it might be that a previous agreement with Kadish by Dreyer, to guarantee the note if Kadish would loan the money to the corporation, would support a guaranty made after Kadish had acquired the note, the evidence does not sustain that there was any such agreement.

A witness of the highest respectability, who is one of the defendants in error, testified to acknowledgments made by Dreyer of his liability as guarantor of the note, and of his assurances that he would pay the note when due, but such evidence was not at all inconsistent with the fact that his guaranty was made without consideration, nor did it imply that there was any previous agreement for his guaranty.

Dreyer may have supposed he was liable to pay the note, and when, at least, some of such assurances concerning his liability were made, may have believed that the money to

pay the note would be realized upon a sale of the mortgaged plant, but he was not thereby estopped from making all lawful defenses when sued upon his guaranty.

Although it is contended that it was the province of the jury to settle the question, when Dreyer's name was put upon the note, we are not at liberty to sustain a judgment which is so manifestly against the evidence as in this case.

The judgment was wrong, and must be reversed, and the cause remanded.